IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02504-REB-MEH

MICHELE DORENE MCLAIN,

    Plaintiff,

v.

MICHAEL DUSSART, Correctional Officer La Vista Correctional Facility,

    Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion to Dismiss [filed May 8, 2013; docket #31]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion has been referred to this Court for recommendation [docket #32]. The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, the Court RECOMMENDS that Defendant's motion be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

**BACKGROUND**

Plaintiff initiated this civil rights lawsuit on September 20, 2012, as a *pro se* litigant incarcerated at the Denver Women's Correctional Facility. (*See* docket #1).

**I.   Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in the operative Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff arrived at La Vista Correctional Facility in March 2011. She was placed in Unit 6 on the Farm Crew. From the first day she moved into Unit 6, Defendant Correctional Officer (CO) Michael Dassart inappropriately fondled and touched her during his graveyard shift. For example, CO Dussart would come in and watch Plaintiff take a shower, and when she came out CO Dussart would call Plaintiff to the office and reach under her shirt and rub and fondle her breast. CO Dussart told Plaintiff that if she said anything, she would be the only one getting in any trouble. Plaintiff wrote grievances, only to have them disappear.

Plaintiff was glad when she was moved to the Behavioral Program in Unit 4, which had cameras everywhere. Plaintiff felt somewhat safer because CO Dussart would be on videotape if he continued his conduct. However, CO Dussart would still make sexual comments to Plaintiff when working in Unit 4, such as "nice," "can I touch you?" and "what size are your breasts?" Then, in August 2011, Plaintiff was terminated from the Behavioral Program and on August 11, 2011, Plaintiff was placed into "Restricted Privileges," which is located in Unit 6 on the Lower North side. Unit 6 has no cameras in the unit, so CO Dussart continued to make sexual comments to Plaintiff,

and to fondle and touch her inappropriately. Once again, Plaintiff submitted a grievance, and was told no one ever received it.

On November 8, 2011 at 1:30am, Plaintiff woke up and found CO Dussart in her cell/room Unit 6-105. CO Dussart had one hand in her sleeping shorts fondling her buttocks and genitals, and his other hand under her t-shirt rubbing, squeezing, and pinching her breast and nipples. Plaintiff was scared and from the look on CO Dussart's face she did not say anything. CO Dussart left Plaintiff's cell and came back to the door and motioned for her to get up, so she did. When CO Dussart leaned down at the door to kiss Plaintiff, she turned her head. CO Dussart then told Plaintiff to go brush her teeth and meet him in the storeroom closet. Plaintiff shut the door and put a chair in front of it.

Plaintiff's roommate at the time was Regina Waddles, #154030. Ms. Waddles asked Plaintiff what was going on because she had seen CO Dussart at the door trying to kiss Plaintiff and telling her to go brush her teeth and meet in the storeroom closet. When Plaintiff came out of the restroom, CO Dussart called her to the office and, once again, put his hand up her shirt and began to fondle her again; however, CO Dussart then moved his hand and ordered her back to her room, because Sgt. Whitney was on her way there. Plaintiff went to her room and did not come out until shift change. Plaintiff filed another grievance, but nothing was received or done.

On November 15, 2011, Plaintiff was moved to Unit 5, which has only one camera in the downstairs hallway in front of the office. Plaintiff felt a little safer, but had an upstairs room, where there were no cameras. One evening in the Med-line, Plaintiff asked an offender, BearEskew, to whom she could report the incident and BearEskew told her to notify Lt. Jordan. On November 22, 2011, during shift change, CO Dussart noticed the Plaintiff and motioned for her to come out of her

3

room. CO Dussart walked her to the upper hallway and told her to get moved downstairs. Plaintiff went back to her cell and addressed an envelope to Lt. Jordan, then tried to sleep. On November 23, 2011, Plaintiff was paged to the Lower 5 Block Office. When she went in, Sgt. Scavarda and CO Julie Bishop told Plaintiff that she had "better knock off whatever [she's] trying to do or pull" and that they were requesting Plaintiff be moved out of Unit 5. Plaintiff was not moved, but she was treated poorly and disrespectfully by Sgt. Scavarda and CO Bishop.

On December 3, 2011, Plaintiff was called to the Shift Commanders Office and got a pass from CO Gant. Plaintiff was met by a female officer at the door and escorted to Captain Casias' office, where she was questioned. Plaintiff explained the situation, then was told by Cpt. Casias to wait in the lobby until the Investigator from the Inspector General's Office arrived. Investigator Matthew Richardson and the Plaintiff went to another room where she was questioned and told by Investigator Richardson that now would be a good time to recant her allegations; the investigator told her the same thing two more times.

Afterward, CO Alfonso and CO Soto cuffed and shackled the Plaintiff before escorting her to Medical for an Anatomical Body Sheet, then to Segregation. Plaintiff was told it was for her own protection. Plaintiff spent from December 3, 2011 to December 14, 2011 in Segregation removed from the population. On December 14, 2011, Plaintiff asked to talk with Lt. Shayne Hughbanks who was in the Segregation Unit D. Lt. Hughbanks was rude, disrespectful, unprofessional and called Plaintiff a liar three times. Then Lt. Hughbanks told Plaintiff she was getting a "Class 1" (for False Reporting To Authorities) on December 15, 2011. Then CO Tim Beiler brought Plaintiff to the "Class 1." Plaintiff went to a hearing on December 22, 2011 at 8:00 am; she was found guilty and sentenced to 45 days in Segregation (with 13 days' credit) and she lost 60 days' good time. Plaintiff

appealed the discipline on December 25, 2011, and on December 29, 2011, Plaintiff learned the discipline against her was upheld.

## II.    Procedural History

Based upon these factual allegations and construing the Complaint liberally, Plaintiff alleges that Defendant violated Colo. Rev. Stat. § 24-50-116 governing Standards of Performance & Conduct (Claim One) and Colo. Rev. Stat. § 24-18-108 governing Rules of Conduct for Public Officers & State Employees (Claim Two). Complaint, docket #1 at 6, 7. Plaintiff seeks recovery for "mental anguish" in the amount of $500,000.00, punitive damages in the amount of $1,500,000.00, and payment of her medical expenses, court costs and fees. *Id*. at 10.

Defendant responded to the Complaint by filing the present motion arguing the Plaintiff fails to state a claim for relief under 42 U.S.C. § 1983. Defendant construes the Complaint as alleging state law claims or violations of Plaintiff's Eighth Amendment right against cruel and unusual punishment. Specifically, Defendant asserts that Plaintiff concedes on the face of her Complaint that she has not exhausted her administrative remedies. In the alternative, Defendant argues that neither of the statutes the Plaintiff claims he violated provide a private right of action. Defendant also contends that Plaintiff fails to allege sufficient facts to support a claim of sexual harassment pursuant to the Eighth Amendment. Defendant concludes that, because Plaintiff fails to state a constitutional claim for relief, he is entitled to qualified immunity.

Construing her response liberally, Plaintiff counters that she is not required to exhaust administrative remedies for her particular claims of "physical assault or attack." She also argues that remedies were unavailable to her, as the grievances she filed "disappeared" and she was threatened against saying anything about Defendant's conduct or filing grievances. The Plaintiff does not

directly counter Defendant's arguments concerning the state statutes or the Eighth Amendment.

Defendant replies objecting that Plaintiff's response was untimely filed. Further, Defendant contends that Plaintiff improperly cites to cases without any discussion as to how they apply to her claims and, thus, the Court should not construe her response liberally. Defendant also argues that Plaintiff's cited cases are inapposite and/or have no precedential value.

The Court is now fully advised and recommends as follows.

## LEGAL STANDARDS

### I.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

"The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## II.     Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting

*Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

Before proceeding with its analysis, the Court concludes that the "Supplement" filed by the Plaintiff on July 22, 2013 (docket #45) will not be considered in the adjudication of the present motion. Plaintiff did not seek leave to file the Supplement; if it was meant to supplement her response, it was untimely filed; and, the document does not appear to address issues raised in the present motion. The Plaintiff specifically states in the Supplement that it "was part of my Amended Complaint" and the document contains information that does not appear to be aimed at the present motion, including what appears to be the Plaintiff's copying (by hand) of sections of a prison manual, a request for relief from the Court (which is proper only by motion), and a description of Plaintiff's alleged mental and/or emotional injuries. *See id.*

With respect to Plaintiff's Response brief (docket #42), the Court recommends overruling Defendant's objection that the brief was untimely filed. Although this Court ordered the Plaintiff to file the Response on or before July 8, 2013 (docket #41), the brief was received in this Court on July 10, 2013, within three mailing days of the deadline. Furthermore, the Court recommends overruling Defendant's objection that the Response is unresponsive. Although the Plaintiff does not engage in actual discussion of her rebuttal to the present motion, she proffers case citations and parenthetical information sufficient to put the Defendant on notice of her legal theories. Mindful of the Tenth Circuit's admonition to construe Plaintiff's filings liberally, the Court finds that Plaintiff's Response is sufficiently responsive to the present motion.

Defendant advances alternative arguments supporting his motion to dismiss: (1) Plaintiff concedes that she has failed to exhaust her administrative remedies; and (2) Plaintiff fails to allege

facts sufficient to state an Eighth Amendment or state law claims. The Court will begin with an analysis of the "failure to exhaust" argument; if the Court finds Plaintiff has sufficiently alleged exhaustion of administrative remedies, the Court will turn to the alternative argument that Plaintiff fails to state claims for violation of the Eighth Amendment and/or state law.

## I.     Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (1996). The administrative remedies provision of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

§ 42 U.S.C. 1997e(a). At one time, exhaustion was left to the discretion of the district court; however, it has since become mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id.* "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). The purpose of proper exhaustion is to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record. *Id.* (quoting *Woodford*, 548 U.S. at 94-95).

Accordingly, the Supreme Court has determined "exhaustion is mandatory under the PLRA" and "unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 204. The exhaustion of administrative remedies need not be pleaded in the complaint but must be raised as an affirmative

defense. *Id.* The rules governing the process for fulfilling the administrative remedy obligation are not articulated by the PLRA but are defined by the respective prison grievance process. *Id.* at 205. In order to "properly exhaust" in satisfaction of the PLRA requirement, the plaintiff prisoner must comply with all prison grievance procedures. *Id.*; *see also Woodford*, 548 U.S. at 90-91 (finding that the PLRA exhaustion requirement "demands compliance with an agency's deadlines and other critical procedural rules"). Therefore, according to *Jones*, claims that have not progressed through the prison grievance process may not be brought in court.

The CDOC maintains a written grievance procedure that includes three levels of appeal for its inmates. A.R. 850-04.[2] After the three levels of appeal have been properly exhausted, the grievance officer is responsible for notifying the "offender" that he or she has exhausted his or her administrative remedies. *Id.* (IV)(G)(1)(c)(1). A prisoner does not exhaust his administrative remedies when he fails to properly complete the grievance process or correct deficiencies in his grievances before filing a lawsuit. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a Section 1983 claim under the PLRA for failure to exhaust his administrative remedies." *Id.* Once the offender has exhausted all administrative remedies, he or she may then file a suit in federal court.

Defendant argues that Plaintiff concedes on the face of her Complaint that she has not exhausted her administrative remedies. Plaintiff does not dispute this fact; however, she argues (1) that she was not required to exhaust under the circumstances of this case, or (2) that her remedies were unavailable because she was threatened against reporting Defendant's conduct and her grievances "disappeared" after she submitted them. The Court finds that Plaintiff's first argument

---

[2]The complete regulation is available on the CDOC's website, www.doc.state.co.us.

is a question of law, but the second is a question of fact.

### A. <u>Requirement to Exhaust</u>

Here, for her first argument, Plaintiff appears to contend she was not required to exhaust administrative remedies because the "grievance procedures could not have compensated [her] for injuries," and because the term "prison conditions" in the PLRA "does not encompass intentional physical attack, conspiracy to use excessive force." Response, docket #42 at 3. Defendant counters that Plaintiff's citations are to non-precedential cases, which are distinguishable on the facts.

Plaintiff cites to *Freeman v. Godinez*, 996 F. Supp. 822 (N.D. Ill. 1998) for the proposition that she was not required to exhaust because the grievance procedures could not have compensated her for her injuries. In *Freeman*, the court held "[m]onetary compensation for physical injury resulting from a constitutional tort is not available through the grievance procedure. Therefore plaintiff was not required to utilize it." *Id.* at 825. However, the opinion in *Freeman* was issued before the Supreme Court's opinion in *Booth v. Churner*, 532 U.S. 731, 741 (2001) discussing the amendments to the PLRA concerning this issue. The Court in *Booth* held that "Congress mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Id.*; *see also Jernigan*, 304 F.3d at 1032 ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available."). Consequently, this Court is not persuaded that Plaintiff was not required to exhaust simply because the CDOC's grievance procedure did not offer monetary recovery as a remedy.

In addition, Plaintiff cites to *White v. Fauver*, 19 F. Supp. 2d 305 (D.N.J. 1998) for the proposition that the term, "prison conditions," in the PLRA does not encompass intentional physical attacks or conspiracy to use excessive force. Response, docket #42 at 3. However, the *White*

11

opinion was specifically abrogated by *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000) (which, itself, was upheld in *Booth*, 532 U.S. at 741). *See In re Bayside Prison Litigation*, 190 F. Supp. 2d 755, 757 (D.N.J. 2002). Again, the Court is not persuaded by the Plaintiff's argument that she was not required to exhaust administrative remedies at the CDOC because she alleged a physical assault. Rather, Plaintiff is required to exhaust all available administrative remedies for her allegations that Defendant sexually harassed and/or assaulted her. *See Garcia v. Joseph*, 404 F. App'x 268, 270 (10th Cir. 2010) (plaintiff failed to exhaust available administrative remedies regarding claims of sexual harassment and retaliation against correctional facility employees when he failed to pursue any remedy to completion).

      B.     <u>Administrative Remedies Unavailable</u>

Defendant argues in the present motion that a court may dismiss an inmate's claims pursuant to Fed. R. Civ. P. 12(b)(6) when it is apparent from the face of the complaint that the inmate failed to exhaust administrative remedies. *See* Motion, docket #31 at 10. In this case, Plaintiff's Complaint reveals that she checked "no" when asked whether she had exhausted administrative remedies. Complaint, docket #1 at 9.

However, the Complaint also contains Plaintiff's allegations that remedies were unavailable to her because the grievances she submitted "disappeared" and because Defendant threatened against reporting his conduct. *Id.* at 4-5. Plaintiff signed her Complaint under penalty of perjury. *Id.* at 10. Therefore, Plaintiff's Complaint serves as a declaration that may be offered as evidence in response to a motion for summary judgment pursuant to Rule 56. *See* Fed. R. Civ. P. 56(c); *see also Adams v. Dyer*, 223 F. App'x 757, 764 n.7 (10th Cir. 2007) (citing *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988)) (typically, in the summary judgment context, a pro se litigant's verified complaint

may be treated as an affidavit as long as it satisfies the standards for affidavits outlined in Rule 56). Accordingly, the Court concludes that it may not dismiss Plaintiff's claims pursuant to Rule 12(b)(6) based only upon the Plaintiff's negative answer to the question whether she exhausted administrative remedies in her Complaint; rather, the Plaintiff's Complaint may raise an issue of fact concerning whether remedies were available to her, thus requiring the matter to be heard under Rule 56.[3]

Therefore, the Court recommends that the District Court decline to grant Defendant's motion to dismiss based upon the alternative argument that Plaintiff failed to exhaust administrative remedies.

**II.     Failure to State Claims for Relief**

Defendant also asserts that Plaintiff fails to state claims for relief in this case. First, Defendant argues that Plaintiff's stated claims in violation of state statutes are improper because neither statute provides her a private right of action. Second, Defendant construes the Complaint as containing an Eighth Amendment claim and contends that Plaintiff's allegations do not rise to the level of a constitutional claim.

     A.    <u>Statutory Claims</u>

Plaintiff alleges Defendant's conduct constitutes violations of Colo. Rev. Stat. § 24-50-116 and § 24-18-108. The first statute governs the "standards of performance and conduct" of state personnel. *See* Colo. Rev. Stat. § 24-50-116. The second statute governs the rules of conduct for

---

[3]The Court recognizes that typically a court is required, pursuant to Fed. R. Civ. P. 12(d), to convert a motion to dismiss to a motion for summary judgment when evidence outside of the Complaint is proffered. However, the Court finds here that neither party "presented matters outside the pleadings" in support or opposition of the present motion. Rather, the Defendant merely argues that dismissal pursuant to Rule 12(b)(6) is appropriate where, as here, the Plaintiff concedes in the Complaint that she has not exhausted administrative remedies. This Court disagrees.

public officers and state employees with respect to their fiduciary duties in financial transactions. *See* Colo. Rev. Stat. § 24-18-108. Upon review of these statutes, there is nothing to suggest that, even if applicable to the allegations here, the statutes were intended to provide the Plaintiff with a private claim for relief. *See USA Tax Law Center, Inc. v. Office Warehouse Wholesale, LLC*, 160 P.3d 428, 430 (Colo. App. 2007) ("[a]bsent statutory intent to create a private right of action, courts may not create one, ....") (internal quotation marks) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)). Moreover, violations of state law do not give rise to a claim pursuant to 42 U.S.C. § 1983. *Romero v. Bd. of Cnty. of Lake, Colo.*, 60 F.3d 702, 705 (10th Cir. 1995).

Accordingly, the Court must agree that Plaintiff's stated claims for relief pursuant to the state statutes fail to state plausible claims for relief in this lawsuit. The Court recommends that the District Court grant Defendant's motion to dismiss any claims Plaintiff has brought pursuant to Colo. Rev. Stat. § 24-50-116 and § 24-18-108.

### B. Eighth Amendment Claim

Plaintiff does not expressly allege her claims under the Eighth Amendment, but the Defendant, for purposes of the present motion, construes Plaintiff's Complaint as possibly alleging an Eighth Amendment claim. *See Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (acknowledging that allegations of sexual abuse can satisfy the objective component of an Eighth Amendment claim). Defendant contends that he is entitled to qualified immunity because the Plaintiff fails to state a constitutional claim.

#### 1. *Qualified Immunity*

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow*

14

*v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-35. *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park*

*City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's potential Eighth Amendment claim, the Court examines first whether Plaintiff has alleged sufficient facts supporting a plausible claim that Defendant violated Plaintiff's constitutional right against cruel and unusual punishment. If the Court finds that Plaintiff has alleged sufficient facts showing the violation of a right, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

    2.    *Constitutional Right Violated?*

"Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)). The Tenth Circuit has held "that an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). "To hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met." *Barney*, 143 F.3d at 1310.

> First, the deprivation alleged must be objectively "sufficiently serious," depriving the inmate of the minimal civilized measure of life's necessities. Second, the official must have a "sufficiently culpable state of mind," which in this context means the official must exhibit "deliberate indifference" to a substantial risk of serious harm to an inmate. Thus, the deliberate indifference standard in a prison-conditions case is a "subjective" and not an "objective" requirement. That is, a prison official is liable only if the official knows of and disregards an excessive risk to inmate health and safety. It is not enough to establish that the official should have known of the risk of harm.

*Id.* (citations and some internal quotations omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or

harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Joseph v. United States Fed. Bur. of Prisons*, No. 00-1208, 2000 WL 1532783, at *1 (10th Cir. Oct. 16, 2000) (unpublished) (citing *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997)); *see also Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995).

With respect to the objective prong, "because the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain,' that is forbidden by the Eighth Amendment." *Joseph*, 2000 WL 1532783, at *1. However, a simple claim that the alleged unwanted touching caused emotional distress "is insufficient to implicate the Eighth Amendment." *Id.* The Supreme Court has determined that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citation omitted). "An action by a prison guard may be malevolent yet not amount to cruel and unusual punishment." *Marshall v. Milyard*, No. 10-1104, 2011 WL 285563, at *2 (10th Cir. 2011) (unpublished) (citing *Hudson*, 503 U.S. at 1, 9 (1992)). The Tenth Circuit has held that if a "[p]laintiff does not allege that the [offensive touching] was conducted 'in an abusive fashion or with unnecessary force,' he does not state a claim under the Eighth Amendment." *Jackson v. Cen. N.M. Corr. Facility*, 976 F.2d 740, 1992 WL 236921, at *4 (10th Cir. 1992) (unpublished) (quoting *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986)); *see also Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." (internal citations omitted)); *Howard v. Everett*, 208 F.3d 218, 2000 WL 268493, at *1 (8th Cir. 2000)

(unpublished) ( "sexual harassment, absent contact or touching, does not constitute unnecessary and wanton infliction of pain").

With respect to the subjective prong, "an official .... acts with deliberate indifference if [his] conduct ... disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Hovater*, 1 F.3d at 1066. "Deliberate indifference requires 'a higher degree of fault than negligence, or even gross negligence.'" *Id.* (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990)). "The 'mere fact that an assault occurs ... does not establish the requisite indifference to a prisoner's constitutional rights.'" *Id.* (quoting *Zatler v. Wainwright*, 802 F.2d 397, 403 (11th Cir. 1986)).

Defendant argues that Plaintiff's allegations merely set forth that she has been subjected to unwelcome and inappropriate touching and fondling, and that such allegations do not rise to the level of an Eighth Amendment claim. The Court agrees. Although Plaintiff's allegations that Defendant watched her shower, fondled her, and tried to kiss her are certainly offensive, pursuant to prevailing law they do not state an Eighth Amendment claim, because Plaintiff does not allege that she suffered "severe physical and psychological harm" as a result of Defendant's conduct. *See Joseph*, 2000 WL 1532783, at *1. Plaintiff mentions in her Complaint that she seeks damages for "mental anguish and psychiatric treatment now and for the unlimited future" (Complaint, docket #1 at 8), but she does not explain or describe any such emotional distress or medical treatment, if any. Moreover, the Plaintiff fails to allege that Defendant acted "in an abusive fashion or with unnecessary force" when he watched, fondled and tried to kiss her, as necessary for an Eighth Amendment claim. *See Jackson*, 976 F.2d 740, 1992 WL 236921, at *4.

Accordingly, the Court must conclude that Plaintiff fails to state a constitutional claim here

and that Defendant is entitled to qualified immunity. This Court respectfully recommends that the District Court grant Defendant's motion to dismiss Plaintiff's Eighth Amendment claim to the extent it can be construed from Plaintiff's Complaint.

### III.     Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)).

Here, the Court recommends that Plaintiff's Eighth Amendment claim be dismissed for failure to state sufficient facts to support a plausible claim for relief. However, the Plaintiff in this case is proceeding *pro se* and has not been previously granted leave to amend. Therefore, because it is possible the Plaintiff may cure the pleading deficiencies of this claim against the Defendant, the Court recommends that Plaintiff be allowed to file an Amended Complaint, consistent with Fed. R. Civ. P. 8 and 9(b) and other federal and local rules, within thirty (30) days of the District Court's Order. That is, the Plaintiff must identify the rights she believes were violated, the name of the person or entity which violated that right, exactly what that individual did or failed to do, how the

action or inaction of that person or entity is connected to the violation of the Plaintiff's rights, and what specific injury Plaintiff suffered because of the other person's or entity's conduct. *See Ferrell v. Stumpf*, No. 10-1231-PHX-MHM, 2010 WL 3925133, at *2 (D. Ariz. Oct. 4, 2010) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). Any Amended Complaint should focus on facts from which the Court can determine the harm Defendant allegedly caused to Plaintiff and why Plaintiff is entitled to seek relief for the alleged harms in this Court. *Id*.

## CONCLUSION

In sum, the Court finds that Plaintiff has failed to allege plausibly any state statutory or Eighth Amendment claims. However, the Court recommends that Plaintiff be granted leave to amend her Complaint to cure any deficiencies noted for her Eighth Amendment claim. Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that Defendant's Motion to Dismiss [filed May 8, 2013; docket #31] be **GRANTED**, but that Plaintiff be granted leave to file an Amended Complaint within thirty (30) days of the District Court's order.

Entered and dated at Denver, Colorado, this 1st day of August, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge